IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| A. DONALD GARDNER, and DYAMOND WHITE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> HCL AMERICA, INC., <br><br> Defendant. | **COLLECTIVE ACTION COMPLAINT** <br><br><br><br> CIVIL ACTION NO._____ |

Plaintiff A. DONALD GARDNER ("Gardner") and DYAMOND WHITE ("White") (collectively "Plaintiffs") individually and on behalf of other similarly situated individuals, file this Collective Action Complaint against Defendant HCL AMERICA, INC. ("Defendant" or "HCL"), and its affiliates known and unknown involved in failing to pay overtime wages to its customer service representatives. On personal knowledge of their own circumstances, and on investigation and the information and belief of their counsel, Plaintiffs aver the following:

## NATURE OF THE CASE

1. This is a Collective Action Complaint brought to obtain declaratory and monetary relief on behalf of a class of individuals who worked at Defendant HCL's locations nationwide and whom HCL failed to pay overtime wages. Plaintiffs allege violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.

2. Defendant employs Customer Service Representatives ("CSRs") at its call centers who operate switchboards for Defendant's end clients

3. The FLSA collective group consists of all individuals who worked more than 40 hours in any given work week, and who received no overtime compensation pursuant to

29 U.S.C. § 207(a)(1) at any time during the applicable limitations period (the "Collective Group"). This action challenges Defendant's denial to Plaintiffs and the Collective Group of overtime wages owed to them.

## PARTIES, JURISDICTION & VENUE

4. Plaintiff Gardner is a natural person, who, at all times relevant, resided in the City of St. Paul, County of Ramsey, State of Minnesota. Plaintiff began working at HCL's St. Paul call center on or around October 2017.

5. Plaintiff White is a natural person, who, at all times relevant, resided in the City of Woodbury, County of Washington, State of Minnesota. Plaintiff began working at HCL's Woodbury call center on or around October 2018.

6. Defendant employed Plaintiffs as CSRs which required them to operate a call switchboard.

7. Defendant is a California Corporation doing business throughout the state, including in the County of Ramsey, State of Minnesota.

8. Defendant directly and indirectly, through agents or other persons, employed Plaintiffs and the Collective Group Members, and exercised control over the wages, hours, and working conditions of Plaintiffs and the Collective Group Members.

9. Venue is proper in the District of Minnesota under 28 U.S.C. section 1391(b) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this District.

10. The Fair Labor Standards Act of 1938 ("FLSA"), codified as 29 U.S.C. section 201 et seq., authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

2

11. Plaintiffs bring this action on behalf of themselves and a Collective Group of similarly situated individuals.

## COLLECTIVE ACTION ALLEGATIONS

12. Plaintiffs seek to bring this case as a nationwide "opt-in" collective action pursuant to 29 U.S.C. section 216(b), on behalf of themselves as named plaintiffs of the following persons:

> All persons employed as hourly-paid employees by Defendant in any call center nationwide at any time within the last three years, whose duties during that period of time included speaking with customers by telephone and using a computer in connection with the telephone calls.

13. Plaintiffs and current and former employees of Defendant in Covered Positions are similarly situated in that they have substantially similar job requirements, pay provisions, and are subject to Defendant's common practice, policy, or plan of failing to pay them for all hours, including overtime hours worked.

14. Defendant regularly permitted and required Plaintiffs and Collective Group Members to work more than 40 hours per week without overtime compensation.

15. Defendant knew that Plaintiffs and other similarly situated individuals performed work that required overtime pay.

16. Defendant has therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

17. Defendant's conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiffs and all other similarly situated individuals.

18. The FLSA claim is pursued on behalf of those who opt-in to this case, pursuant to 29 U.S.C. section 216(b).

19.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and all other similarly situated individuals and notice of this lawsuit should be sent to such individuals. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's employment and payroll records.

20.     Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, HCL's practice of failing to pay employees for all overtime compensation due, and failing to accurately record all hours worked. The facts for these allegations are set forth below in Count I. The number and identity of other plaintiffs yet to opt-in and consent to be party-plaintiffs may be determined from HCL's records and Collective Group Members may easily and quickly be notified of the pendency of this action.

## FACTUAL ALLEGATIONS

21.     At all pertinent times, Defendant required Plaintiffs and Collective Group Members to be at their workstations, ready for customer calls at the very start of their shifts, with all computer screens up and ready, and Collective Group Members regularly complied.

22.     Collective Group Members had to perform work before the start of their shifts to prepare to be ready at the start of the shift, but Defendant required that they log-in to its computer system in an auxiliary status so that their work time would not recorded or paid until the start of the shift. As a result, Defendant failed to pay Collective Group Members for their time worked before the start of the shift. Some or all of this unpaid time at the start of the shift was overtime, i.e. time in excess of 8 hours in a day or in excess of 40 hours in a week.

23.     In addition, Defendant failed to pay Collective Group Members when they were on "unavailable" status in the Avaya system (and later Salesforce system), even though the

4

Collective Group Members were working and suffered and permitted to work while on that status.

24. In addition, at all times pertinent to this action, Defendant had and implemented a policy or practice, and still do, whereby they only compensated Collective Group Members for the hours they were scheduled to work. Defendant required Plaintiffs and the Collective Group Members to record and submit their hours on its website, yet Defendant would not and does not approve of any hours worked above which the employee was scheduled work or in excess of 40 hours in a given workweek. Instead of paying Collective Group Members for the time that was worked and recorded, Defendant only paid class members for the time for which they were scheduled. Defendant's policy or practice included adjusting the time worked by Collective Group Members to stay at or under the total time Collective Group Members were scheduled to work.

25. At all pertinent times, Defendant has had the ability to record, and did record through its website, the work time of Collective Group Members to the minute, and the ability to pay them to the minute.

26. At all pertinent times, Defendant compensated Plaintiffs and Collective Group Members based on their scheduled hours as opposed to the hours they actually worked and reported.

27. Before the start of their scheduled shift, Plaintiffs and Collective Group Members were required to start their computers, download any updates required by Defendant's software, and log-in to the software application in the "unavailable" mode. Then, five minutes before the start of their scheduled shift, Collective Group Members status could be changed to "available."

Changing their mode or status to "available" served as "logging-in" to work for Plaintiffs and Collective Group Members.

28. If calls were waiting in Defendant's queue before Plaintiffs and Collective Group Members could change their status to "available", Defendant regularly required Plaintiffs and Collective Group Members to take calls before their scheduled start time and they regularly complied. Defendant did not compensate Plaintiffs and Collective Group members for this time.

29. Defendant's software application tracks the amount of time Plaintiffs and Collective Group members were logged in to the system under each status or mode. Plaintiffs and Collective Group members are not paid for any time they worked under the "unavailable mode."

30. Defendant regularly required Plaintiffs and Collective Group Members to complete trainings and perform additional work on projects which was not compensable. Defendant required Plaintiffs and Collective Group Members to complete trainings and perform this work as "unavailable" or under the status "meeting" or "project" none of which were compensable.

31. For example, if Defendant required Plaintiffs and Collective Group Members to work for ten hours a day, two of which were under the "meeting" status to complete training, Defendant only compensated them for eight hours.

32. Until approximately August 2019, Defendant used Avaya to manage calls and required employees to document those calls in Salesforce. In or around August 2019, Defendant began using the software application Salesforce to manage calls and stopped using Avaya. Both the Avaya and Salesforce software applications allowed for the statuses "available" and "unavailable."  Although the additional codes including "lunch," "break," and "project" existed

6

in both applications, defendant began using those codes after the company shifted to using Salesforce exclusively. With Salesforce, Defendant added the code "bathroom" and began tracking the time employees spent in that status."

33.     Defendant regularly added up the time Collective Group Members were logged in under the codes, "lunch," "break," and "bathroom" and updated its records to reflect that Collective Group Members worked less than their scheduled shift and paid deducted that time from the hours they were scheduled to work during that shift. Defendant had a pattern and practice of using these modes to deduct the hours worked, and thereby the amount it paid, to Collective Group Members. Defendant did not compensate Plaintiff and Collective Group Members more if they did not take their breaks or were in the "available" mode longer than the time for which they were scheduled.

34.     Defendant required the Collective Group Members to be at their workstations, ready for customer calls at the very start of their shifts, with all computer screens up and ready and the Collective Group Members regularly complied. However, Defendant did not compensate Collective Group Members for any of this time and only compensated them for the time of their scheduled shift.

35.     Defendant and its managers and supervisors instructed Plaintiffs and Collective Group Members to be at Defendant's offices at least fifteen minutes before the start of their scheduled shift to log into and start up their computers, set up their workstations including opening any applicable applications, and be ready to take work at no later than their scheduled shift.

36.     Defendant's managers and directors regularly required Plaintiffs and Collective Group Members to take customer calls before the start of their scheduled shifts and before they were in "available" status if they were at their workstations.

37.     For example, if the shift started at 8:00 a.m., the Collective Group Members logged-in to their computers and got ready to work around 7:45 a.m. and changed their status to "available" from 7:55 to 8:00 a.m. Defendant regularly transferred Plaintiff and the Collective Group Members customer calls if they were at their work stations and failed to pay Collective Group Members for their time worked before the start of their scheduled shift. Some or all of this unpaid time at the start of the shift was overtime, *i.e.* time in excess of 8 hours in a day or in excess of 40 hours in a week.

38.     The Collective Group Members were not permitted to stop work until the end of the shift, and they regularly complied. However, Plaintiffs and Collective Group Members were on telephone calls that began near the end of shift, and when the end of the shift arrived, they were not allowed to stop the calls, but had to finish them, and they regularly complied.

39.     Plaintiffs and Collective Group Members regularly took calls that began near the end of their shift and ended after their shift but were not paid for their work after the end of their scheduled shift.

40.     For example, if the shift ended at 5:00 p.m. and the Collective Group Members began a call at 4:55 p.m., they may not finish the call until 5:10p.m. Defendant regularly transferred Plaintiff and Collective Group Members customer calls at the end of their shift and failed to pay Collective Group Members for their time worked after the end of their scheduled shift. Some or all of this unpaid time at the start of the shift was overtime, *i.e.* time in excess of 8 hours in a day or in excess of 40 hours in a week.

41. In November 2017, Plaintiff Gardner began working for Defendant as a CSR earning a salary of $1,300 every two weeks. Plaintiff Gardner remained in that role until December 2019. Plaintiff Gardner worked at HCL's Woodbury offices at all times relevant herein.

42. In approximately July or August 2017 Defendant reclassified Customer Service Representatives as hourly employees. At that time, Plaintiff Gardner earned $15 an hour.

43. Plaintiff Gardner is informed and believes and thereon alleges that at all times relevant herein, he was a nonexempt employee because he was paid at a regular hourly rate.

44. In October 2018, Plaintiff White began working for Defendant as a CSR earning $15 an hour. Plaintiff White remained in that role until January 2020.

45. Plaintiff White is informed and believes and thereon alleges that at all times relevant herein, she was a nonexempt employee because she was paid at a regular hourly rate.

46. Plaintiffs were not considered exempt from overtime as administrative employees within the meaning of 29 U.S.C. § 213(a)(1). An "employee employed in a bona fide administrative capacity" is someone whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and ... [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (emphasis added).  Plaintiffs' duties were wholly unrelated to the management or general business operations of Defendant.

47. Plaintiffs were not considered exempt from overtime as learned professional employees within the meaning of 29 C.F.R. § 541.301(a) because his primary duties are not those: 'Requiring knowledge of an advanced type in a field of science or learning customarily

CASE 0:20-cv-02340-ECT-DTS   Doc. 1   Filed 11/17/20   Page 10 of 16

acquired by a prolonged course of specialized intellectual instruction.'" 29 C.F.R. § 541.300. Plaintiffs' job required no advanced knowledge and did not require any prolonged course of study.

48. As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Collective Group have suffered and continue to suffer loss of wages and benefits, compensatory damages, and other serious damages.

## FIRST CAUSE OF ACTION
### Violation of Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

49. Plaintiffs incorporate by reference the allegations set forth above.

50. At all times material herein, Plaintiffs and Collective Group Members have been entitled to the rights, protections and benefits provided under the FLSA, codified as 29 U.S.C. § 201, et seq.

51. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § (a)(1).

52. HCL is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

53. Plaintiffs allege that the Collective Group Members were victims of Defendant's single policy to pay nonexempt employees based upon Defendant's time records, which are derived from inter alia, Avaya/Salesforce time records and schedules for Plaintiffs and Collective Group members, as opposed to the times they actually worked. Plaintiffs are informed and believe and thereon allege that Defendant's Avaya/Salesforce time records do not take into

account the employees' computer log-in and log-out times. Computer log-in and log-out times are the most accurate measure of when an employee started and ended work because that is when the employee is "subject to the control of the employer." However, log-in and log-out times do not take into account the time required for Collective Group Members to set up their computers and workstations.

54. HCL violated the FLSA by failing to pay and properly calculate and/or pay all overtime to Plaintiffs and all other employees similarly situated.

55. Plaintiffs allege Defendant violated the FLSA by failing to pay and properly calculate and/or pay overtime compensation. In the course of perpetrating these unlawful practices, HCL has also willfully failed to keep accurate records of all hours worked by its employees.

56. Section 13 of the FLSA, codified at 29 U.S.C. section 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Plaintiffs or any other similarly situated employees because they were not employed in a bona fide executive, administrative or professional capacity. These exemptions are more specifically addressed in paragraphs 46 and 47, supra.

57. Plaintiffs and all other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this complaint, plus periods of equitable tolling, because HCL acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

58. At all times relevant herein, HCL owed a duty to Plaintiffs and all other Collective Group Members to compensate them for time worked in excess of forty hours in one workweek at a rate not less than one and one-half times the Collective Group members' regular

rates of pay at which they are employed, respectively, also known as overtime rates, under 29 U.S.C. section 207(a)(1).

59.     HCL breached its duty to Plaintiffs and all Collective Group Members to provide overtime compensation for work in excess of forty hours in any one workweek. The breach was caused by and through Defendant's standard and uniform system of timekeeping and compensation practice.

60.     Federal law mandates that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

61.     Defendant's uniform policy and practice required Plaintiffs and all other of Defendant's nonexempt employees to arrive approximately fifteen minutes prior to the beginning of their shifts. Plaintiffs are informed and believe and thereon allege that this was done so that the employees could have all necessary software programs running prior to the start of their shift. Examples of Defendant's violations of this FLSA statute follow in the proceeding paragraphs.

62.     Plaintiffs are informed and believe and thereon allege that Defendant does not pay its employees from the time they log into their computers until the time they log out of their computers, which is the actual time they were "subject to the control" of Defendant. Accordingly, the times in the examples below do not take into account, inter alia, (1) the time Plaintiffs and Collective Group Members spent logging into their computers at the beginning of the day until the time they activate Avaya/Salesforce, or (2) the time Plaintiffs and Collective Group members spent deactivating Avaya/Salesforce until the time they log out of their computers.

63. Plaintiffs allege that Defendant is required to pay its nonexempt employees from the time they log into their computers until the time they log out of their computers, because this is "work time" that nonexempt employees are "suffered or permitted" whether or not it was requested by Defendant. 29 CFR §7 85.11.

64. Thus, Plaintiffs allege that Defendant's timekeeping system of basing employees' hours worked off, *inter alia*, Defendant's Avaya/Salesforce time records is inherently inaccurate, as it does not take into account all time worked.

65. Defendant's Avaya/Salesforce time records do not take into account the employees computer log-in and log-out times. Computer log-in and log-out times are the most accurate measure of when an employee started and ended work because that is when the employee is "subject to the control of the employer."

66. Plaintiffs are informed and believe and thereon alleges that the examples set forth above are typical of all nonexempt employees, in that Defendant fails to take into account computer log-in and log-out information for all nonexempt employees.

67. Plaintiffs are informed and believe and thereon allege that a majority of Defendant's nonexempt employees routinely worked forty-hour workweeks. Plaintiffs are informed and believe and thereon allege that where Defendant's time records—derived from Avaya/Salesforce time records—indicate an employee worked forty hours in one workweek (as they most often do), such records fail to take into account the additional time worked pre-Avaya/Salesforce activation and post-Avaya/Salesforce deactivation. This failure to take into account time worked in excess of forty hours per workweek—and the resulting failure to pay overtime wages—is a violation of the FLSA. 29 U.S.C. § 207(a)(1).

68. HCL has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and all other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described pursuant to title 29, U.S.C. section 216(b). Plaintiffs consistently arrived at work 15 minutes before their shifts and are entitled to liquidated damages for these overtime violations. Alternatively, should the Court find HCL did act with good faith and reasonable grounds in failing to pay overtime compensation, Plaintiffs and all other similarly-situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

69. As a result of the aforementioned willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by HCL from Plaintiffs and all other similarly situated employees. Accordingly, HCL is liable for compensatory damages pursuant to 29 U.S.C. section 216(b), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs of this action.

70. Plaintiffs seek, among other remedies as set forth within the Prayer for Relief, (1) an injunction prohibiting any further practice of failing to pay overtime compensation for time worked in excess of forty hours in any one workweek, and (2) recovery, individually and on behalf of the Collective Group members, of all money and penalties withheld.

71. As a direct, proximate, and foreseeable result of Defendant's violation of the statute, Plaintiffs and the Collective Group Members sustained damages.

72. THEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a collective action and for judgment to be entered upon Defendant as follows:

1. Awarding economic and compensatory damages on behalf of Plaintiffs and all members of the Collective Group;

2. Awarding restitution;

3. Awarding statutory damages as provided under the FLSA;

4. Awarding actual damages sustained or treble damages;

5. Awarding punitive damages, as otherwise applicable;

6. Awarding injunctive and declaratory relief, as claimed herein;

7. Declaring that Defendant violated the FLSA;

8. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiffs rights;

9. Awarding reasonable attorney fees and reimbursement of all costs for the prosecution of this action as provided by the FLSA; and

10. Granting other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

[signature block on next page]

Dated: November 17, 2020         Respectfully submitted by:

*s/ Dustin W. Massie*
Dustin W. Massie
Bar No. 396061
Joni M. Thome
Bar No. 232087
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
dmassie@baillonthome.com
jthome@baillonthome.com